# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| UNITED STATES OF AMERICA, | |
|---|---|
| v. | Criminal No. 19-217 (ADC) |
| OSHALE REID, et al., | |
| Defendants. | |

## OPINION AND ORDER

Pending before the Court are co-defendant Oshale Reid's motion to dismiss the indictment (**ECF No. 53**)[1], and the government's opposition thereto (**ECF No. 58)**. For the reasons set forth below, co-defendant's motion to dismiss (**ECF No. 53**) is **DENIED.**

### I. Introduction and procedural history

On April 3, 2019, a federal grand jury indicted co-defendants, charging them with conspiracy to illegally possess marihuana with intent to distribute on board a vessel subject to the jurisdiction of the United States, 46 U.S.C. §§ 70502 (c)(1), 70503 (a)(1), 70506 (a) & (b); and possession of marihuana with intent to distribute on board a vessel subject to the jurisdiction of the United States, all in violation of 46 U.S.C. § 70502 (c)(1), 70503 (a)(1), 70506 (a) & (b), and 18 U.S.C. § 2. **ECF No. 16**. These charges, under the Maritime Drug Law Enforcement Act ("MDLEA"), stem from the more than one hundred kilograms of marihuana that the U.S. Coast

---

[1] The remaining co-defendants moved to join Reid's motion to dismiss. *See* **ECF Nos. 55, 56, 65, 76, 79**. Kaunda Omar Jackson, Damian Hall and Wayne Wright Harvey's motions for joinder were terminated upon entry of their pleas of guilty and judgment of conviction. *See* **ECF Nos. 116-123**. Anderson Omar Dimes' request to join the motion to dismiss was granted at **ECF No. 81**. Silvan Dick's motion to join the motion to dismiss is hereby **GRANTED**, albeit on February 25, 2020, he filed a motion for change of plea. **ECF No. 79**.

Guard ("USCG") allegedly recovered from a vessel, occupied by co-defendants and found within U.S. customs waters, about eleven nautical miles southwest of Navassa Island, a U.S. territory. **ECF No. 1-1**, ¶ 5.

The USCG crew observed six persons on board whom, on approach of the USCG Cutter, started jettisoning multiple packages overboard. *Id.* As a result, the USCG Cutter deployed a small boat with the law-enforcement boarding team to interdict the vessel. *Id.* A second USCG small boat was dispatched from the USCG Cutter to recover the jettisoned packages. *Id.* at ¶ 6. A total of forty-eight bales of suspected contraband were recovered from the water. *Id.* The individuals were arrested, and later transported together with the seized evidence to Puerto Rico for processing and transferred to custody of the U.S. Department of Homeland Security for investigation. *Id.* at ¶ 8.

Co-defendants Reid, Dimes and Silvan, who are all foreign nationals (Jamaican), *id.*, ¶ 9, pleaded not guilty to the charges. **ECF Nos. 25, 28**. On July 31, 2019, Reid filed a motion to dismiss the Indictment for lack of jurisdiction.[2] **ECF No. 53**. All other co-defendants moved to join Reid's motion to dismiss. *See* **ECF Nos. 55, 56, 65, 76, 79**. Essentially, co-defendants challenge the constitutionality of the MDLEA alleging it constitutes an "*ultra vires* exercise of Congress' power under Article I of the U.S. Constitution", contravenes international law, and violates their due process rights under the Fifth Amendment.

---

[2] When a defendant seeks dismissal of an indictment, courts take the facts alleged in the indictment as true. *United States v. Ngige*, 780 F.3d 497, 502 (1st Cir. 2015).

## II. Discussion

### A. Co-defendants lack standing to raise compliance with international law as defense

At the outset, as the government correctly points out, the MDLEA expressly provides that

[a] person charged with violating section 70503 of this title…does not have standing to raise a claim of failure to comply with international law as a basis for a defense. A claim of failure to comply with international law in the enforcement of this chapter may be made only by a foreign nation. A failure to comply with international law does not divest a court of jurisdiction and is not a defense to a proceeding under this chapter.

Since co-defendants were charged under section 70503 of the MDLEA, they lack standing to argue lack of jurisdiction based on Congress' or the USCG's purported violations of international law. *See United States v. Matos-Luchi*, 627 F.3d 1, 6 (1st Cir. 2010) (noting that "defendants are not entitled to raise a violation of international law as an objection…").

### B. Co-defendants' lack of jurisdiction argument is meritless

"The MDLEA makes it unlawful for an individual to 'knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance on board . . . a vessel of the United States or a vessel subject to the jurisdiction of the United States.'" *United States* v. *Nueci-Peña*, 711 F.3d 191, 197 (1st Cir. 2013) (ellipsis in original) (quoting 46 U.S.C. §70503 (a)(1)). "That prohibition 'applies even though the act is committed outside the territorial jurisdiction of the United States.'" *Id*. (quoting 46 U.S.C. § 70503(b)); *see also United States v. Trapp*, No. 16-153, 2017 U.S. Dist. LEXIS 101569, *9 (D.P.R. May 11, 2017)

(noting that the MDLEA expressly applies to offenses committed outside the U.S.'s territorial jurisdiction).

"Underscoring its aim to reach broadly, Congress defined 'a vessel subject to the jurisdiction of the United States' to include six categories of boats", including among them a vessel "in the customs waters of the United States", 46 U.S.C. § 70502(c)(1)(D), and a "vessel in the contiguous zone of the United States[3]" that is (1) entering the United States, (2) has departed the United States, or (3) is a "hovering" vessel as defined in 19 U.S.C. 1401[4], 46 U.S.C. § 70502(c)(1)(F)(3). *See Matos-Luchi*, 627 F.3d at 3.

Co-defendants' lack of jurisdiction argument is premised on the following: that they are not U.S. citizens, their vessel was not "stateless" as defined in the MDLEA[5], the vessel was not coming from or going to the U.S., the bales seized were not destined for the U.S., and a nexus is lacking between the offenses charged and the U.S. **ECF No. 53** at 3. Their arguments, however, are inapposite to the facts of this case, and conveniently ignore alternate solid grounds for jurisdiction.

---

[3] As defined in 43 U.S.C. 1331, "[t]he term 'United States' includes all Territories and possessions of the United States except the Virgin Islands, American Samoa, Wake Island, Midway Islands, Kingman Reef, Johnston Island, and the island of Guam."

[4] Defines "hovering vessel" as:
(1) any vessel which is found or kept off the coast of the United States within or without the customs waters, if, from the history, conduct, character, or location of the vessel, it is reasonable to believe that such vessel is being used or may be used to introduce or promote or facilitate the introduction or attempted introduction of merchandise into the United States in violation of the laws of the United States; and
(2) any vessel which has visited a vessel described in paragraph (1).

[5] Reid contends that since he made a verbal claim of nationality, and the government failed to prove that the vessel is not registered in the claimed nation (Jamaica), the vessel should not be considered stateless under the MDLEA. **ECF No. 53** at 21.

As co-defendants stipulate for purposes of the motion to dismiss, the USCG apprehended them about eleven miles southwest off the coast of Navassa Island. **ECF Nos. 53** at 2. The complaint shows that the USCG crew observed co-defendants jettisoning multiple packages overboard, which were recovered, and later identified as forty-eight bales of controlled substances. **ECF No. 1-1**. Based on those facts, the USCG properly found that the vessel was in U.S. customs waters under 46 U.S.C. § 70502 (c)(1)(D) and had reason to suspect violations to 46 U.S.C. §70503 (a)(1), granting them valid grounds for jurisdiction over co-defendants and the vessel.

It is well settled that pursuant to § 70503 (a)(1) of the MDLEA, it is illegal for an individual to knowingly or intentionally manufacture, distribute or possess with intent to manufacture or distribute controlled substances, while on board a "covered vessel". Under the MDLEA, a "covered vessel" is a "vessel of the United States" or a "vessel subject to the jurisdiction of the United States." 46 U.S.C. §70503 (e)(1). As noted above, the MDLEA broadly defines a vessel "subject to the jurisdiction of the United States" to include, among others, a vessel in "in the customs waters of the United States", 46 U.S.C. § 70502(c)(1)(D).

In this context, customs waters are the waters within four leagues or 12 miles off the coast of the U.S., as defined at 19 U.S.C. § 1401(j)[6]. *See United States v. Santana-Rosa*, 132 F.3d 860, 863-

---

[6] Albeit not the case here, with the consent of the flag nation, "customs waters of the United States" can be created around a particular vessel that otherwise would be sailing in international waters. *See* 19 U.S.C. § 1401(j); *United States v. Mena*, 863 F.2d 1522, 1532 (11th Cir. 1989); *see also United States v. Vouloup*, 625 F. Supp. 1266, 1267 (D.P.R. 1985 (the United States may extend its "customs waters" to specific foreign vessels, and specific foreign vessels may be designated as within "customs waters" through specific arrangements with the governments of foreign nations).

864 (1st Cir. 1998); *United States v. Cabaccang*, 332 F.3d 622, 644 (9th Cir. 2003) (noting that 19 U.S.C. §§ 1401(j) and 1581(a)-(b) grant customs and Coast Guard officers jurisdiction to board vessels within U.S. customs waters, defined to extend four leagues, i.e. twelve miles, from shore); *United States v. Victoria-Peguero*, 920 F.2d 77, 80 (1st Cir. 1990) ("[b]eyond the three mile limit, Congress has designated the 'customs waters' of the United States, 19 U.S.C. § 1401(j) (1988), and authorized federal customs officers to search vessels within those waters, i.e., within twelve miles of shore"). Since co-defendants were apprehended within 12 miles from the coast of Navassa Island, a U.S. territory, there is no question that their vessel was subject to the jurisdiction of the U.S. pursuant to §70502 (c)(1)(D). *See e.g. United States v. Peterson*, 812 F.2d 486, 493 (9th Cir. 1987) (holding that "the statutory basis for asserting jurisdiction over the vessel is that it was boarded within the customs waters of the United States," as defined under 21 U.S.C. § 955a(c), the MDLEA's predecessor, and 19 U.S.C. § 1401 (j)).

In this context, a nexus is patently present between the offenses charged and the U.S. since co-defendants were within U.S. customs waters. Therefore, this Court need not delve into whether the vessel was stateless as defined under the MDLEA, its nationality, its point of origin or destination, or the citizenship of co-defendants for purposes of establishing jurisdiction. Jurisdiction here stems from the location of the vessel, not its status as stateless or not. *See United States v. Perlaza*, 439 F.3d 1149, 1164 (9th Cir. 2006) (citing *United States v. Smith*, 282 F.3d 758, 767 (9th Cir. 2002) (acknowledging the difference where "jurisdiction depends not on the ship's location (e.g., 'the waters where a vessel is allegedly intercepted,'…), but rather upon its status,

that is, whether the ship is stateless or not.")) As a result, the constitutionality of the MDLEA's provision extending jurisdiction over stateless vessels and whether a nexus between the offenses and the U.S. are not at issue here, and this Court need not address these matters.[7] *See United States v. Ramírez*, Crim. No. 19-117, 2019 U.S. Dist. LEXIS 189135, *4 (D.P.R. Oct. 28, 2019) ("[a]s jurisdiction over the vessel was not exercised under the 'vessel without nationality' provisions found at 46 U.S.C § 70502(c)(1)(A) and (d)(1), the Court need not reach defendants' arguments challenging these provisions of the MDLEA.")

Even so, as the government points out, there are also grounds for jurisdiction pursuant to 46 U.S.C. §70502 (c)(1)(F), insofar as the vessel was within the U.S. contiguous zone[8] and was a "hovering vessel" as defined in 19 U.S.C. 1401. *See United States v. Gil-Carmona*, 497 F.3d 52, 55 (1st Cir. 2007). Namely, based on the location of the vessel, the USCG had reason to believe that such vessel was being used to introduce or promote or facilitate the introduction or attempted introduction of merchandise into the United States in violation of the laws of the United States. *See* n. 3 above. Consequently, co-defendants' request for dismissal for lack of jurisdiction irremediably fails.

---

[7] It is a "settled rule" of judicial decision-making "to decide no more than is necessary to the case in hand." *United States v. Clark*, 266 F. Supp. 3d 573, 582 (D.P.R. 2017) (citations omitted).

[8] The contiguous zone extends twenty-four miles from the coastline of the United States. *United States v. Martínez*, 640 Fed. Appx. 18, 24 (1st Cir. 2016); *see also United States v. Gil-Carmona*, 497 F.3d 52, n. 6 (1st Cir. 2007) ("Presidential Proclamation 7219 of August 2, 1999 defines the contiguous zone of the United States to extend to twenty-four nautical miles from the baselines of the United States, including the Commonwealth of Puerto Rico. Proclamation No. 7219, 64 Fed. Reg. 48,701 (Sept. 8, 1999)").

### C. The MDLEA does not violate co-defendants' due process rights

Lastly, co-defendants allege that the MDLEA violates their Fifth Amendment due process rights because the MDLEA's "statelessness" provision is constitutionally vague, and it criminalizes conduct lacking a nexus to the U.S. **ECF No. 53**. They also posit that despite Mr. Reid making a verbal claim of nationality, the government failed to show that the boat is not registered in the claimed nation (Jamaica), therefore, the vessel should not be considered stateless.

Such arguments are unavailing in this case since, as discussed above, jurisdiction upon co-defendants' vessel is not premised on co-defendants' vessel's statelessness or nexus to the U.S. When the USCG intervened, co-defendants' vessel was within U.S. customs waters, not on the high seas or the territorial waters of a foreign nation. This necessarily precludes any need for a showing or discussion of statelessness.

Moreover, the First Circuit has categorically rejected the argument for jurisdictional nexus since 1999, when it held that "due process does not require the government to prove a nexus between a defendant's criminal conduct and the United States in a prosecution under MDLEA," *United States* v. *Cardales*, 168 F.3d 548, 553 (1st Cir. 1999); *United States v. Angulo-Hernández*, 565 F.3d 2, 10 (1st Cir. 2009); *see also Trapp*, 2017 U.S. Dist. LEXIS 101569, *9 (rejecting defendants' argument that the MDLEA violates due process by criminalizing conduct lacking nexus to the U.S.); *United States v. Salazar-Realpe*, No. 16-159, 2015 U.S. Dist. LEXIS 80016 *7 (D.P.R. June 18, 2015) (dismissing defendants' arguments that without a showing of a nexus

between conduct charged and the United States, their prosecution is arbitrary and fundamentally unfair, in violation of the Fifth Amendment, since there is no need for a nexus linking the conduct charged to the United States under the MDLEA).

Co-defendants cannot complain that the MDLEA "fails to give them adequate *legal* notice," nor that "the circumstances in which the statute applies [to them] are unusual." *United States* v. *Robinson*, 843 F.2d 1, 5 (1st Cir. 1988) (emphasis in original) (construing 21 U.S.C. § 955a (1982), a predecessor statute of the MDLEA). The MDLEA is clear that the possession of drugs with intent to distribute on a vessel in the customs waters of the United States violates U.S. law. *See* 46 U.S.C. §§ 70502(c)(1)(D), 70503(a)(1). Moreover, "Coast Guard stops and 'sweeps' of vessels traveling in the Atlantic or Caribbean en route from South to North America are frequent and routine." *Robinson*, 843 F.2d at 5 (citing H.R. Rep. No. 323, 96th Cong., 1st Sess. 3-4 (1979)). In *United States v. Carvajal,* 924 F. Supp. 2d 219, 263 (D.C. 2013), the court held that defendants "were on notice that, by using a stateless vessel to transport narcotics across the high seas, they were opening themselves to the possibility of prosecution." A similar reasoning applies here when co-defendants decided to transport illegal substances across U.S. customs waters. Thus, "defendants freely embarked on a course of conduct that they knew could lead to criminal consequences under United States law." *See Robinson*, 843 F.3d at 5; *see also United States v. Al Kassar*, 660 F.3d 108, 119 (2nd Cir. 2011) (noting that "[f]air warning does not require that the defendants understand that they could be subject to criminal prosecution in the United States so long as they would reasonably understand that their conduct was criminal and would subject

them to prosecution somewhere.") The Court finds that applying the MDLEA to defendants is neither arbitrary, nor unfair. *Cardales*, 168 F.3d at 553. Rather, it complies fully with international law and due process. As a result, the Court rejects defendants' claims that the MDLEA violates their due process rights.

### III. Conclusion

Based on the above, the Court **DENIES** co-defendants' motion to dismiss at **ECF No. 53**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 28th day of February, 2020.

                                                 **S/AIDA M. DELGADO-COLÓN**
                                                 **United States District Judge**